The second case, which is Humane Society versus United States Fish and Wildlife Service, and we'll hear from Mr. Mullen. Good morning, Your Honor. May it please the Court. There are three principal issues framed by the briefs in this case. The first is whether the Fish and Wildlife Service is obliged by the Freedom of Information Act, or more specifically, the reading room provision of FOIA. It's called eFOIA. To post certain documents to its website without prior request. The second is whether the Court is powerless to enforce eFOIA as the service contends. And the third is whether the service successfully evaded a ruling on its eFOIA obligations when it produced and posted certain documents after it was sued. The documents that are at issue in this case are related to the enforcement of the Endangered Species Act and an International Convention on Trade in Endangered Species. Before anyone can import a lion or elephant trophy from Africa, the importer has to obtain a permit from the service. And before the service can issue such a permit, it's got to make a finding. Among other things, that hunting the species in the country of export will enhance the survival of the species. Those finding documents, the applications that trigger the findings, and the permits that the service issues, those are the documents that this case concerns. Each category of documents that I just mentioned is covered by a separate provision of eFOIA. I'm going to deal first with the finding documents that the service issues. Those documents are final opinions rendered in the adjudication of cases. That's one of the statutory triggers for mandatory posting under eFOIA. That's statutory language. Yes, Judge. Can I stop you? And I appreciate your argument that the findings and permits are opinions and orders. But isn't the issue here that whether they're opinions and orders under, you know, A through C, or whether they're documents that fall within subsection D, that the agency has responded to the request and I know there's an argument about whether they fully responded. Put that aside for the second. They've responded to your request. So it seems to me a debate about whether these are opinions or orders or not. Regardless of how it's decided, even if this is decided in your favor, get you more documents pursuant to your request. Does it get – have they withheld any based on that issue? Well, thank you for the question, Your Honor. And I think it does get at least one of the very central questions in this case. I think that the government has mistaken the purpose of this litigation from our perspective. It has almost nothing to do with the specific set of documents that we requested, my clients requested, under A3, which is the traditional sort of request and response aspect of FOIA. We've had a long history with this agency of requesting documents, them stonewalling, us having problems getting documents. That has almost nothing to do with this case. This case was brought – go ahead, Your Honor, I'm sorry. Go ahead, I'm sorry. No, you finish. I'm sorry. This case was brought to establish the e-FOIA obligations, not the request and response obligations of the agency, but the e-FOIA obligations to post documents as they're created, routinely created, and statutorily mandated documents as they're created going forward. The agency insists – yes, Your Honor. Well, that may be your purpose, but to look at what you requested, I think we've got to look at the relief you requested. And if you look at the relief you requested, you did not – you have one declaratory claim, and that claim isn't, as I read it, that these documents fall within, you know, A2, A through C, or that these documents are opinions and orders. Your relief – the only declaration you sought was that they violated FOIA, and so – that they have violated FOIA. And so I'm not sure I understand. I appreciate you saying that's the purpose, but if you haven't asked for that specific relief and you have the documents that would result from that type of declaration, how do we have a controversy in this case? Well, Your Honor, we do say, paragraph 98, that copies of permits issued in enhancement and non-detriment findings must be posted online because they qualify as rules, opinions, orders, policies, or interpretations. If the prayer for relief section of the complaint was ambiguous or too general or whatever, that's subject to repair. That's not – you don't get dismissed on lack of jurisdiction under those circumstances. The government's principle case – I'm sorry. Let me just follow up. Sure. You're exactly right about there's no doubt you pled that these documents constitute opinions and orders. I grant you that section, but you cited it to me. But if – conceded – you also pled that they are subject to production and e-filing under D, and then they were responded to the request. So at this juncture, I'm still not understanding how the – what you say the purpose was would get you any more documents pursuant to your request. Well, what it will get us, Your Honor, is compliance by the agency with its e-FOIA obligation to post these documents as required by e-FOIA on an ongoing basis. The government's best case, the case they rely on most heavily, is the Crewe case from the D.C. Circuit. And even the Crewe case acknowledges that the statute provides for the ability of the district court to order prospective relief. That is to tell the agency you've got an e-FOIA obligation to post these materials, to provide these materials on an ongoing basis. Now, Crewe was mistaken, in my view, for a lot of reasons we can discuss in limiting that to putting us essentially on a mailing list, that the government's got to send them to us but doesn't have to put them on the website. I grant you that. We can talk about why Crewe was in error there. But, Your Honor, I'm looking at the relief requested on page – let's see, it's 65 of the Joint Appendix. Order the defense on an ongoing basis to make all these documents available via their online reading room. So we are asking for the prospective relief, and we're saying that the agency – it's alien to me, Your Honor, that an agency can say that we've complied with one provision of the Act, and therefore you have no complaint if we fail to comply with a second provision of the Act. My clients currently, in order to get these materials, have to use A3. They have to file a request with the agency, have correspondence with them over the course of months and years. It's taken years for us to get these documents. Ultimately, we get some, not all. There's a factual dispute that, frankly, is a red herring in this case. I think it's a hair on the tail of the dog. We have a right to have the agency comply with its E-FOIA obligations. We have a right to prospective relief that requires them to comply with that obligation. So I'm going – I want to go back to, I think, following up on what Judge Quattlebaum was asking you. Where do I look in your complaint to tie together what you're arguing now for this prospective relief? Well, again, I'm on page 65. That the government needs to – pardon? I'm sorry. I didn't mean to interrupt you, Your Honor. Go ahead. I think you were directing me somewhere. Paragraph C of the relief requested provision on page 65 of the appendix. To make all these documents available in a timely manner after receipt or creation of the records in the agency's online reading room consistent with E-FOIA. So that's the prayer for ongoing relief, correct? Correct. That's correct, Your Honor. Okay. So I hear you on that basis. And we may need to talk about – maybe we can separate the claim for current relief versus ongoing relief. Do you concede that with respect to the existing request for documents, that declaring the findings to be opinions and orders would not get you any more different response? I'm happy to concede, Your Honor, that they can't give us the documents they've given us anymore. We have the documents that they gave us, and they posted the documents that they posted. Now, there was – And also the district court found that your request had been fulfilled. Yeah. So – Again, Your Honor, I think that this is such a minor detail in this case. I hate to belabor it and spend a lot of time on it, but we came to the hearing. Well, I mean, if your request had been fulfilled, then this is for sure moot. They haven't been. We came to argument on the motion to dismiss. The government produced and posted a bunch of documents. I know, with that binder. The night before. And I came to the court, Your Honor, with a binder of documents that had been produced to us on a disk but hadn't been posted. And I offered to give it to the judge. I said they still haven't complied. And he said, I'll take your word for it. The government hasn't denied that this is the case. And so I'll take your word for it that they haven't posted everything. Then we got the decision that said that they posted everything. It was most strange, Your Honor, and a great disappointment that I hadn't been sufficiently convincing. But this case, again, the idea that the government has said – The trophy records from January 1, 2016 forward have been posted online. Do you have anything to counter that? We're on a motion to dismiss, yes. We submitted a declaration. And we also had my representation to the court the morning of argument about the state of play, which the court accepted. And then the decision was contrary to the court's representation to me. But, again, this case involves an agency that says we have no obligation under E-FOIA. Even if we have an obligation, you can't make us comply. We don't intend to comply with it in the future. And that's what this case is about. Yes, Judge Cuomo. Yeah, and I know I may have been responsible for keeping you from getting to that point. But we're at it now, and I'd like to discuss that, please, and I appreciate. I think what you're getting now into is your request for an order of injunction to produce documents on an ongoing basis. Correct. And so let's talk about that. The district court, you know, said that the language of D-3 largely suggested that was not an appropriate type of relief for a – I'm sorry, a – it was not appropriate relief for a relief under subsection D. I appreciate that you could argue, well, we're requesting it under A through C-2. Right. And I think that's what you were getting at earlier. But don't – if I – but if I look at A-4-B, the statutory provision that allows for injunctive relief, it only talks about injunctive relief to enjoin withholding of agency documents or improperly withheld documents. Right. And that language seems to me to imply strongly the existence of existing documents, because how can they be withheld if they don't exist? Well, again – So it seems to me you may want – and I understand why you want it, don't get me wrong – the relief you're talking about, but I don't think that subsection is – or I'd like your response as to whether that subsection does it. And if it doesn't, it seems like the way you would have to frame this is to request documents only under subsection A. Somehow you have to be – this – the way this case has progressed may prevent you from doing it here. And I'm not criticizing that at all, but I'm just – I'm just suggesting that if we don't have the ability to do future injunctions – and I know you think we do – the way – I don't see how we have standing to do it here. Well, there are a couple things, I think, Your Honor. Yeah. Forgive me if my thoughts on this are a little disjointed, because I'm trying to put it in the frame of your question. Yeah, and that may have been a – go ahead. So far as I know, no court other than the district court here has ever said prospective relief is unavailable. The two cases, I think, that we look at here, both cases on which the government relies heavily, are the Crew case, which I've just discussed, which explicitly, unambiguously says that A4B, the remedial provision of FOIA, does permit a prospective injunctive relief requiring the A4B. It allows the agency to produce records as they're created. So that's their best case. The other case on which they rely heavily is the Lipton case. The Lipton case wasn't an opinion and order case. It had to do with the frequently requested documents provision, and I think it was Judge Bates in the District of Columbia – this is the EPA administrator – and a media organization said every day that a new calendar entry is created, you should have to provide it, you should have to post it. And the court said, I can't do that. Number one, the statutory trigger is it has to be substantially the same as documents that have been released in the past, and how do I know whether they're substantially the same unless they have been created and I can look at them? That's number one. Number two, how's the court going to know or how is the agency going to know whether an entry on a particular day is subject to an exemption? It may contain some confidential proprietary information, third-party information. It may have personnel matters that are subject to an exemption. I can't order the EPA administrator on an ongoing basis to post online documents that haven't been created because they're subject to all of these differences, these vagaries. None of that applies here. What's in these documents is there because Congress has said it must be. These findings are defined by law. The permits are defined by law. The applications that we're discussing are on pre-printed forms. There's no argument. Yes, Your Honor. Yeah. Judge Quattlebaum, did that answer your question? Yes. Yes. Thank you. All right. Judge Gallagher, do you have anything further at this point? No. All right. Thank you, Mr. Mullen. You have some time on rebuttal. You have five minutes on rebuttal. Thank you, Your Honor. Thank you. We'll hear from Ms. Yang. Thank you, Your Honor. Good morning, Your Honor. Good morning to you all, and may it please the Court, Assistant United States Attorney Catherine Yang, on behalf of the federal agencies. The judgment of the district court should be affirmed because the claim concerning the posting of existing records is moot and plaintiffs cannot separately obtain injunctive relief for records that do not yet exist. The amended complaint in this action sought to have the agency post the existing records at issue here to its FOIA reading room. The agency did just that after plaintiffs submitted additional FOIA requests for those records because with those new requests, the agency determined that the requirements of A to D had been met, which triggers the obligation to post them online in the first place. So the throughline of plaintiffs' brief and argument today, essentially that the agency refuses to comply with the reading room provision, is wrong. The agency complied, and here complies, by posting records when they become frequently requested. I would add, too, that this is not new or unusual behavior by the agency. At various points in 2018, even before this lawsuit was ever filed, the agency had been posting material of this very sort to its online reading room, and it continues to post those records online to its reading room when they become frequently requested. The agency did so most recently in June of this year, but also previously in July and September of 2019, and as I noted, even well before this lawsuit ever was filed. So the district court correctly determined that the agency's posting of these documents mooted the claim, and there was nothing left for the court to do. Now, I understand that plaintiffs have invoked the voluntary cessation doctrine in their papers, so I'll address that briefly here. The agency's compliance with FOIA isn't some bad-faith litigation tactic. The agency posted the records here because the requirements of A2D had been met. That's not ceasing anything. That's affirmatively complying with the statute once the requirements have been satisfied. And I would note, too, that this was all brought about because the agency— Sorry, I have a question. I'm sorry, yes. So you're saying the agency is monitoring to see when a particular set of documents becomes frequently requested and then posts it when it meets that standard, but the agency is holding to its position that the findings and permits here do not constitute opinions and orders triggering FOIA obligations otherwise? That's correct, Judge Gallagher. And we believe that the relief requested, which is the posting of the actual records, has been satisfied, which moots the claim and removes any obligation for—or really any jurisdiction for a court to then determine, well, should these materials have been posted under one provision or another provision, the fact is that the agency has been complying with its reading of obligation and has posted the records. Yes, Judge Packard? But opposing counsel also suggests that the relief they're requesting is that the agency proactively published these documents going forward. What about that? Yes, Your Honor. That injunctive relief is premised on a claim that has already been mooted by plaintiffs on actions here in submitting additional requests that then satisfied the requirements in A2D. There's no remaining cause of action. There's no remaining claim. The only thing that's left is a request for a standalone remedy or otherwise a remedy for a non-judiciable claim. And the courts can't order that remedy in the absence of a live claim. We also know, just as an aside, that this is the right holding because this court repeatedly has confirmed that its job is not to oversee agencies' day-to-day management or overall compliance with programmatic statutes, agency, excuse me, statutory mandates. Instead, there needs to be a specific justiciable claim that forms the basis for a specific request for relief. And if there's not, then the agency, or excuse me, the plaintiff can't just pursue the remedy in its own right. Yes, Judge? Yes. So, I think I understand what you just said. There's an issue that I was discussing. Your colleague was talking about whether future relief is permissible under the statute. But I want to go back to what I think you said and make sure I understand it. Are you saying that aside from that issue, if there's not a viable remaining cause of action, you can't get that relief anyway? Is that what you're saying? That's right, Your Honor. It derives from the longstanding requirement that there be a live case or controversy in a particular action. If there's no live claim, then there's nothing with respect to which a court may order relief, you know, relief existing on its own absent some sort of claim for it to decide. And here, the claim has become moot, which leaves the court nothing left to do. So, I would just reiterate that this... Oh, I'm sorry. Sorry, just a follow-up question. So, how could these entities ever challenge the sort of ability of the... How could they ever make the challenge that there's an ongoing responsibility of the agency to post these documents without them having been requested? It seems to me that under what you're describing, that issue could never reach the courts. There would need to be an allegation that there has been a violation first of the statute. And without that allegation of a violation, you can't, you know, just pursue the standalone remedy. But you're defining violation... I'm sorry, go ahead. Yeah, I'm sorry. Go ahead, Judge Gallagher. I was going to say, you're defining the violation as being the failure to produce particular documents. Here, as I understand it, the entities are challenging the ongoing obligation to post records in perpetuity. So, it's not with respect to particular documents. Under your theory, wouldn't the agency always be able to moot it by turning over particular documents and then not allowing the entities to raise their broader challenge? No, Your Honor. And I don't think that that's the application of voluntary cessation or mootness to these types of FOIA claims. You know, there's been very little case law developed with respect to the application of mootness in a FOIA reading room provision case. And I think that's the... And the only one that I'm aware of is the D.C. Circuit's recent decision in the PETA case cited in the papers. There, the decision made clear that mootness becomes an issue for an agency when the agency has demonstrated that it previously posted a set of records in its reading room and then decided, you know what, despite us having complied with the statute in the past, we're going to take them off. We're going to remove them from the website. We're not going to comply with the statute. And a plaintiff brings suit to say, no, you have to, you know, you have determined that these are documents that must be posted online. You have to comply with your obligation to post these documents online. If the agency then at that point comes in and says, you know what, we're just going to put them back on and we're good to go here, you know, that was the problem that arose in the PETA decision. That's certainly not what's happened here. Again, I point to the history of the agency's actions, which is that even before this lawsuit was ever filed, materials were already being posted online and they continue to be posted online even without any sort of court order to do so to this day. I hope that addresses Your Honor's question. In the opening argument, there was mention made of this binder of records that plaintiffs say it doesn't actually mean that the claim in this case is moot. So I'll just address that straight on. Your Honor, respectfully, I don't think there is any real factual dispute over whether this claim is moot or the completeness of the posting. As Judge Thacker observed, the agency has submitted two declarations confirming that it posted the records at issue here and also swore that it wouldn't take those records down from the website once they were posted. As I also noted, the agency continues to post these types of records online even without any sort of court order to do so. The records that plaintiffs say are missing, they've never told the agency what those records are specifically. They haven't filed anything with the district court or with this court identifying what those records are. What about the binder that they tried to submit to the court? Yes, Your Honor. My understanding is that the court did not make a finding one way or the other. The quote that my colleague cited was, it seemed to me, I wasn't present at the hearing, but it seemed to me a passing remark at the very conclusion of the hearing after the proceedings had ended. But again, there was no fact-finding done there. Plaintiffs certainly could have subsequently submitted the materials in that binder to the court on its docket. It could also have done so with this court. It hasn't. So the agency has no way of following up on that allegation and, in the meantime, has gone back and double-checked and reconfirmed that it's posted everything. So this isn't the kind of clear evidence that would undermine the agency's declarations, which is the standard at the D.C. Circuit of Appellate. Yes. Counsel, I want to go back to the request for an injunction about compliance on an ongoing basis and particularly the claim that the issue about whether that, aside from the standing, the mootness issue, is something that is allowable under the FOIA statute. What's your position on that? Assume, for the sake of discussion only, that we find against you on the mootness issue as it relates to the future injunction. What's your position as to whether that type of relief is permissible under the statute? Yes, Your Honor. And this brings us to the other jurisdictional issue at play here, although not the one that was squarely presented by the district court's opinion. Our position, to answer you directly, Judge Qualabong, is that FOIA does not create jurisdiction for courts to order agencies to post documents online. The D.C. Circuit, which is the circuit with the most extensive FOIA experience, has held for more than two decades in unanimous decisions that courts don't have this jurisdiction. The Southern District of New York recently adopted those decisions, and that case is currently on appeal to the Second Circuit. I understand that plaintiffs criticized the thoroughness of the discussion in the Crew and Kennicott cases, but those decisions considered all of the same arguments that have been raised here, and it's still concluded that Congress specified the type of judicial relief that was available to be a production to the complainant because the remedial provision is focused on relieving injury suffered by an individual complainant, not some sort of general injury to the general public. I acknowledge, of course, the Ninth Circuit came out differently last year in a 2-1 decision. I would note that the dissenting judge in that decision found the unanimous decisions by the D.C. Circuit persuasive, and respectfully, our position is that the D.C. Circuit decisions are the more persuasive ones. I'm happy to go through in more detail the textual, structural, and contextual indications in the statute for why this is the proper reading, if it would be helpful, but just as a high-level overview, the text readily supports this interpretation. Judge Quattlebaum, as you mentioned earlier, the language of the statute, it refers in the past tense. It refers to documents improperly withheld, which indicates that these documents have to be in existence first, and the reading that the agency advances and that the D.C. Circuit held is the right interpretation is the only reading that doesn't create any surplusage because the second clause of A.4.B., Order Production of Records Improperly Withheld, to explain it, specifies the meaning of the first clause, which is to enjoin withholding. The reverse reading would read the second clause entirely out of the statute because the first clause about enjoining is so broad that it necessarily encompasses the relief indicated in the second clause. So that would make the second clause completely unnecessary if Congress really meant them to mean two different things. There are also contextual and structural indications in the statute, including that the statute elsewhere uses the term withholding to refer directly to withholding from a complainant. And in another section of the statute, even differentiates withholding on the one hand from making records available to the public. So again, we think there are ample indications in the statute to suggest why this is the appropriate reading that limits the availability of relief to the production of records to an individual requester, as opposed to ordering agencies to post materials online to the general public. One follow-up. Judge Gallagher asked a question to you earlier about what's to prevent an agency from refusing to produce documents. A lawsuit is instituted, then you produce them and you move them and you never get to the issue. And I appreciate your position that that's not that record is not the record before us. But you can see that in that type of record, if there was evidence that that would create potential standing to assert a claim, if there was an evidence, if there was evidence of a pattern of refusing to produce documents and then you moving the claim over and over. I think there would be a difference between the question of whether there's the right to seek judicial review, which is available in A4B, and the separate question of what kind of relief would be available in that type of judicial review. So if a violation of A2 had been pled, certainly the plaintiff could seek judicial review of that claim. But in terms of the specific relief that they could be entitled to and that the court would have jurisdiction to actually issue, that's the separate question that A4B says is limited to production of records to a complainant as opposed to ordering general posting online. So you would say that you might could get relief for specific documents, but you couldn't get the future ongoing injunction. Is that what I'm understanding? That's correct, Your Honor. All right. And I think it also might help to note that although Congress decided not to create the judicial remedy of ordering agencies to post online, that doesn't make the posting obligation, you know, illusory or a mere suggestion as plaintiffs have suggested in their briefs. Congress wrote into the statute other remedies to deal with instances where agencies are not complying with their FOIA obligations. It says that materials that should have been posted under a Subsection A, which is the one dealing with final orders and opinions made in the adjudication of cases, it says if an agency is not posting those documents, it can't then use those records against a party. And so Congress created specific remedies to address issues where there are questions about compliance, but it just didn't create the judicial relief that plaintiffs are requesting here. With my final time, I'll just move very quickly to an issue that came up in the opening argument and more recently in the 28-J letter that was submitted to the court this week. And this is the issue of the meeting of A2A about final opinions and orders. Now, first, let me just say that I don't think the court needs to reach this question at all because of the mootness and the jurisdictional issues, and also because the district court didn't decide these issues. But because it's been emphasized, I'll just make a couple quick notes. The court has specifically held that this provision refers to Congress's efforts to protect against the creation of secret agency law. Now, my colleague has focused on this language of adjudication, which is in the statute, but the language in the statute is actually adjudication of cases. And the inclusion of the limiter of cases has to be meaningful because if Congress really meant A2A to mean literally anything and everything that an agency adjudicates in its normal business, then they would have just stopped right at the term adjudication. This is the mistake that plaintiffs make in their briefs and in the 28-J letter submitted this week. They stop right at adjudication. But Congress didn't stop there. They said adjudication of cases. So the cases requirement has to have some meaning, and courts have held that the cases requirement involves some sort of adversarial component with another party. To that point, plaintiffs admit there's nothing adversarial about the permitting process here. I don't think that's really a dispute at all. And taking a step back, this cases requirement also makes a good amount of practical sense. If A2A really means all run-of-the-mill permitting decisions that agencies make in their respective areas, then even within the Department of the Interior alone, that would include things like camping permits on national parkland. That's also something that agencies decide or adjudicate in that sense of the term. But plainly, that's not something that's creating any sort of agency law or being issued in the adjudication of cases. And my final point is just that the Franks and Markham cases that plaintiffs rely on pretty heavily in their briefs, which came out of the D.C. District Court, they actually tell us exactly why these materials don't fall within A2A. The Franks case says that these permitting decisions don't bind future applications. They don't even bar the same plaintiffs from filing new applications. So they have no future effect. That is the case here, too. So I see that my time is up. I'm happy to address any other questions. But if there aren't, I'll just ask that the Court affirm the judgment of the District Court. Thank you. All right. Thank you, Ms. Yang. We'll hear from opposing counsel again now, Mr. Mullen. Thank you, Your Honor. Very quickly. I'm hearing something. The counsel has described a relationship between cause of action and relief that is, if not certainly unusual and maybe unique to the law. If applied broadly, it would read out the entire provisions of the federal rules on TROs and PIs. The idea that there has to have been a historical violation in order to have a cause of action, which the agency can go away magically after being sued in order to deny the right to relief is something that is foreign to the law so far as I am concerned. The agency has insisted it has no EFOIA obligations with respect to these documents. It doesn't intend to post them in the future. It can't be enforced. It can't be forced to post them. And that is a live controversy under any conception of the case or controversy requirement. It simply is bizarre to me that the government would argue that it is moot. The agency's prospective compliance with the statute, particularly with respect to orders and opinions, is mooted because the agency has, with respect to a specific finite set of documents, complied with subsection D, which is the only subsection they seem to acknowledge. With respect to the remedial powers of the federal court, the court can look at the Ninth Circuit opinion, can look at CRU. The weaknesses in CRU are evident. And I'll just mention a couple of them. First of all, when this, when A4B, the remedial provision, was initially put into FOIA, it was tagged on to the end of A3. It was part of the request and response part of the statute. And so the government argued in case after case that there was no remedial provision with respect to the reading requirement. Congress came back in 1974, broke that language out, put it in a new subsection, and the Senate report says the reason they're doing that is to stop the government from arguing that reading room relief is not available. That's number one. Number two, the Bannercraft case, we don't have to speculate about the court's equitable authority to remedy things that are not specifically mentioned in A4B. We think it's there. The court can make its own determination. But we don't have to speculate about whether the court has equitable authority that extends beyond A4B because in Bannercraft, the Supreme Court said that there's nothing, and I have the quote here someplace. The court says there is nothing in Section A4B, 552A4B, the very provision that's at issue in this case, to suggest that Congress sought to limit the inherent powers of an equity court. The courts in this country have the inherent authority to remedy statutory violations by agencies, and the court has for 200 years had the principle of law. The government is looking at this through the wrong end of the telescope. They say because websites aren't mentioned in A4B, Congress must have intended to deprive the courts of the authority to remedy a violation of EFOIA. That looks at things through the wrong end of the telescope. In fact, for 200 years, the principle has been that Congress knows how to limit the equity power of federal courts, that when it wants to do that, it has to do so explicitly. Those principles were played out in Bannercraft specifically. The argument was made there that because A4B didn't provide for the injunction that the plaintiffs sought, it was beyond the authority of the district court, and the Supreme Court said, no, we have 200 years of history on this very point. We've cited those cases in our brief. The idea that the government can say, we know there's this website obligation in the statute. We don't think these documents are covered, and we're going to put you on this Mobius strip where you request documents, you sue us, we produce the documents. You will never get to the point where there's an adjudication of the government's obligation to post. It is a remarkable assertion on the part of the government here. One thing, I spent all my time previously talking about the jurisdictional equitable issues and responding to the government now. With respect to this adjudication of cases point, the government wants to insert new language into the statute. That is, it's not just an adjudication, it's not just an adjudication of cases, but it's an adversarial adjudication. There are two answers to that. First of all, it's a defined term, which the government doesn't even acknowledge in its brief. Second of all, in NLRB against Sears, the question was a reading room case. The question was whether the government had to put in its reading room decisions by the NLRB general counsel whether or not to pursue a case, whether or not to file a complaint. If the complaint had been filed, it would have been adversarial. But the decision whether to file the claim was not adversarial. In our view, this court can resolve this case by reading two cases. NLRB against Sears and the Bannercraft case answer both the substantive gateway issues, are these documents covered by E-FOIA, and the question whether the courts have the authority to enforce E-FOIA, or conversely, whether the agency can thumb its noses at statutory obligations and proceed without compliance. My time has long since elapsed. I'm sorry, Your Honor, for belaboring the point. All right, thank you. And on behalf of the court, we thank both counsel for your arguments today. We appreciate the work you put into the case, and we'll take it under consideration now and wish you both a happy and good weekend. I don't know about where you are, but the sun is shining spectacularly here in West Virginia. So enjoy. Don't rub it in, Your Honor. Thank you. Thank you. You can visit it. All right. Thank you. We will adjourn court until Monday. Thank you. This honorable court stands adjourned until Monday. God save the United States and this honorable court.
judges: Stephanie D. Thacker, A. Marvin Quattlebaum Jr., Stephanie A. Gallagher